**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| SARAH MCPHERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO._____ |
| v. ) | |
| ) | |
| METROPOLITAN SECURITY SERVICES, ) | |
| INC. D/B/A WALDEN SECURITY ) | JURY DEMAND |
| ) | |
| Defendant. ) | |

## COMPLAINT

**COMES** the Plaintiff, Sarah McPherson ("Ms. McPherson") by and through undersigned counsel, and for her cause of action against the Defendant, Metropolitan Security Services, Inc. d/b/a Walden Security ("Defendant"), would respectfully show unto the Court as follows:

### I. JURISDICTIONAL STATEMENT

1. The jurisdiction of this Court is invoked by Ms. McPherson pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e et seq., and the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.* providing for injunctive and other relief against discrimination in employment. This action also seeks to remedy violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. and the Healthy Workplace Act, T.C.A. 50-1-503. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Supplemental jurisdiction over Ms. McPhersons' state law claims is pursuant to 28 U.S.C. §1367.

### II. NATURE OF PROCEEDING

2. This is a proceeding for compensatory damages, damages for mental anguish, abuse, embarrassment and humiliation, and for such additional damages and attorney's fees as may be necessary to effectuate the purposes of Title VII and the THRA. Ms. McPherson also seeks damages against Defendants for violation of the FMLA and the Tennessee Healthy Workplace Act.

3. At all times material hereto, Ms. McPherson was a citizen and resident of Hamilton County, Tennessee and was employed by Defendant in Chattanooga, Tennessee.

4. Defendant provides security services in Hamilton County, Tennessee. Defendant's business is sufficient to classify Defendant as an employer within the meaning of Title VII, 42 U.S.C. § 2000e, the THRA, T.C.A. § 4-21-102(5), the FMLA, 29 C.F.R. § 825.104, and the Tennessee Healthy Workplace Act, T.C.A. § 50-1-502(3).

### III. FACTS

5. Ms. McPherson was employed by Defendant from November 6, 2015 until her wrongful termination on August 6, 2019. She was hired as Training Administrator and in September 2016 she was promoted to Human Resources Assistant. Ms. McPherson made it known to management that career advancement within the company was very important to her. Ms. McPherson relied upon Defendant's employee handbook which stated that Defendant is an equal employment opportunity employer with a zero tolerance policy for any discriminatory practices, harassment or retaliation.

6. Ms. McPherson had an excellent work record with Defendant and was highly praised for her skills and the experience that she brought to Walden Security. In approximately April 2017, Ms. McPherson was promoted to Learning Management Systems Administrator at the corporate office in Chattanooga. She was assigned to work under Jason Crowe, Learning and

Development Director. Mr. Crowe's supervisor was Lauren Tudor, Executive Vice President. While working under Mr. Crowe, Ms. McPherson continued to pursue advancement within the company.

7. In approximately September or October, 2018, Ms. McPherson was approached by Abi Browning, FSD Director of Human Resources, regarding an available position in FSD. Ms. Browning stated that Ms. McPherson had been highly recommended for the position. Ms. McPherson was very interested in the position. Ms. Browning and Mick Sharp, FSD Vice President, interviewed Ms. McPherson and stated that they wanted her for the position and would talk to Ms. Tudor. Ms. Tudor was supportive of Ms. McPherson's efforts to pursue other opportunities within the company but discouraged her from pursuing that particular position. Ms. Tudor advised Ms. McPherson, "as her big sister," not to take the position, claiming that it would not be a wise career choice, and in fact would be more of a "backwards step" in her career.

8. Mr. Crowe jokingly expressed his displeasure in a text to Ms. McPherson regarding her desire to seek another position within the company, which was disturbing to Ms. McPherson. She had observed that Mr. Crowe was becoming more and more controlling towards her, which was another reason she was seeking a different position in the company. Ms. McPherson felt that Mr. Crowe was not supportive of her advancement within the company, like he was with her male counter-parts. Mr. Crowe refused to discuss avenues for her advancement within the company and withheld job opportunities from her.

9. On November 6, 2018, Ms. McPherson received a Certificate of Outstanding Performance and a letter of commendation from Defendant for her "personal and professional accomplishments at Walden Security."

10. In approximately November of 2018, Ms. McPherson informed Ms. Tudor that she would like to explore a position in Sales. Ms. Tudor agreed and arranged for Ms. McPherson to go to Nashville to spend the day with the Sales Manager. Due to PTO and the holidays, Ms. McPherson's trip to Nashville was postponed. When Ms. McPherson attempted to discuss the position with Mr. Crowe, he would not respond. During this time period, Ms. Tudor stated that another employee, Megan Bell, wanted to transfer to a different department. Ms. Tudor asked Ms. McPherson to speak with Ms. Bell regarding "absorbing" her within the Learning and Development Department. Ms. Tudor told Ms. McPherson that as soon as she trained Ms. Bell, Ms. McPherson could transfer to the position in Sales. In the meantime, Ms. Tudor agreed that Ms. McPherson could begin the process of transitioning to Sales by working a few days a week in Sales and a few days a week in Learning and Development.

11. In approximately January 2019, after Ms. McPherson had trained Ms. Bell, Mr. Crowe called Ms. McPherson into a one-on-one meeting and advised her that the option of transitioning into Sales was no longer on the table. Mr. Crowe told Ms. McPherson it was due to recent changes in business needs but gave no further explanation. Shortly thereafter, Ms. McPherson was promoted to Learning and Development Manager under Mr. Crowe.

12. In June of 2019, while on vacation, Ms. McPherson became aware of an available position for Director of Quality Assurance and applied for the position. She immediately sent a message to Mr. Crowe notifying him of her application, but he did not respond. At the next weekly business meeting, Mr. Crowe told Ms. McPherson he was not happy about her text. Mr. Crowe stated that he would have preferred for Ms. McPherson to tell him in person. When Ms. McPherson tried to explain that she was on vacation, Mr. Crowe told her not to text him if she applied for another position, but to tell him in person. In a very

derogatory tone, Mr. Crowe asked if she was ready for a Director level position. Ms. McPherson stated "Yes," and if not, she could learn the position very quickly. Mr. Crowe stated that he had already spoken with Ms. Tudor and that Ms. McPherson would receive only a "courtesy interview."

13. Due to Mr. Crowe's adverse reactions to Ms. McPherson's repeated attempts to advance her career within the company, Ms. McPherson sent an email to Ms. Tudor and Mr. Crowe on June 24, 2019 requesting to meet with them to discuss her "Career Planning" and the options that were available for her to transition into a position in Quality Assurance. Ms. McPherson had made it known to Mr. Crowe that her passion was Compliance and Quality Management. If there was anything compliance related, Mr. Crowe would say "Sarah, you're going to love this" or "you'll love this because it is your passion" or "I know you love doing this but you'll have to wait to work on this."

14. On June 25, 2019, Ms. McPherson had not received a response from Mr. Crowe or Ms. Tudor regarding her email. She arrived at work sometime between 8-8:30 a.m. She was having a conversation with Mr. Crowe and Ms. Bell when Mr. Crowe received a phone call and stepped out of the office. Mr. Crowe came into Ms. McPherson's office around 9:00 a.m. appearing extremely agitated and upset. He told Ms. McPherson that she needed to come with him. When Ms. McPherson informed Mr. Crowe she had to attend a meeting with the Volunteer Group, Mr. Crowe replied "You're going to miss it." Ms. McPherson immediately knew that something serious had happened. Previously, when Mr. Crowe would share business information, he would not share it with Ms. Bell, only with Ms. McPherson, and then he would tell Ms. McPherson what she was allowed to share with Ms. Bell. Ms. McPherson followed Mr. Crowe to the elevators where they would typically go to another floor with a private office. Mr.

Crowe, however, informed Ms. McPherson that they were going outside, which Ms. McPherson thought this was very odd. Ms. McPherson had no idea the issue was related to her as she had never been in trouble during her employment with Walden Security.

15. Mr. Crowe took Ms. McPherson off company property to Miller Park. While they were walking, Mr. Crowe abruptly and angrily stated "Let's talk about the email." When Ms. McPherson asked him to clarify, he stated "the email you sent last night." Ms. McPherson told Mr. Crowe she was requesting a meeting so they could discuss her career with the company and her interest in the position with Quality Assurance. Mr. Crowe instructed Ms. McPherson to sit down at one of the tables in the park and then proceeded to verbally attack her stating that he and Ms. Tudor found her to be "selfish, greedy and ungrateful" for applying for the position in Quality Assurance after everything they had given her. Mr. Crowe stated that he and Ms. Tudor had spoken to Defendant's Vice President and General Counsel, Kurt Schmissrauter, and they were going to make sure she received her interview, but the position was not going to be hers. Mr. Crowe spoke in a very derogatory and demeaning manner to Ms. McPherson. He ridiculed her for thinking that she could get a Director position. Mr. Crowe stated that there was no Quality Assurance Department, that it was just a position, and there was no place for her there. He stated that they were not looking for a "Sarah." At times, Mr. Crowe would raise his voice at her. He told her she had "ruined her brand," that her email was a "slap in the face," and that he felt blindsided that she had gone around him instead of through him even though she had sent the email directly to him and Ms. Tudor. Mr. Crowe admonished her not to contact Ms. Tudor again without his knowledge and that they would "decide" whether to contact Ms. Tudor together. Mr. Crowe told Ms. McPherson that she needed to think about her email before the next weekly meeting and be prepared to tell him why the email was a bad idea. Mr. Crowe was very abusive,

6

Case 1:20-cv-00126-CLC-CHS   Document 1   Filed 05/20/20   Page 6 of 18   PageID #: 6

threatening, and demeaning towards Ms. McPherson. He told Ms. McPherson that, as a result of her email, he and Ms. Tudor were now questioning her decision-making abilities as a manager for the company.

16. Ms. McPherson tried to remain calm while being verbally attacked by Mr. Crowe. However, she finally broke down and started crying in front of Mr. Crowe and other people in the park. She was very embarrassed and humiliated. Ms. McPherson repeatedly asked Mr. Crowe to end the meeting but he refused. Mr. Crowe continued to verbally attack Ms. McPherson asking why she said "this" or "that." When Ms. McPherson would attempt to respond, Mr. Crowe would cut her off and tell her to stop defending her email. Mr. Crowe told Ms. McPherson that she was not in charge of her career, that he was. Ms. McPherson felt disrespected, humiliated and embarrassed during and after the verbal attack by Mr. Crowe. Mr. Crowe made it clear that she was not going to get the position and she feared for her job.

17. Ms. Tudor did not respond to Ms. McPherson's email. From that point on, Ms. Tudor no longer visited Ms. McPherson as she did previously. Several times a week, Ms. Tudor would come down to Ms. McPherson's floor and stop in the Sales & Marketing wing but would not speak to Ms. McPherson. She also noticed that Mr. Crowe began excluding her from conversations and meetings. Her job responsibilities also started to change as Mr. Crowe began assigning her work to Ms. Bell.

18. When Ms. McPherson received a call from Human Resources to schedule an interview for the Quality Assurance position, she became emotional and disclosed the recent events with Mr. Crowe. Ms. McPherson stated that she saw no reason to pursue the position. Human Resources apologized, stating that Mr. Crowe should not have done that.

7
Case 1:20-cv-00126-CLC-CHS    Document 1    Filed 05/20/20    Page 7 of 18    PageID #: 7

19. In mid-July, Ms. McPherson approached Mr. Schmissrauter requesting a meeting to discuss the situation privately. Mr. Schmissrauter stated "Sure, Friday's would be better." Approximately a week later, Ms. McPherson sent a follow-up email to Mr. Schmissrauter asking if they could meet that Friday. Mr. Schmissrauter did not respond. A few days later, Mr. Crowe told Ms. McPherson that he was going to be in a meeting with the Federal Services Division on the second floor. Ms. McPherson thought it would be a perfect time to go see Mr. Schmissrauter to set up a time to speak with him. When Ms. McPherson arrived at Mr. Schmissrauter's office, he was in a meeting with Mr. Crowe and Ms. Tudor.

20. As a result of the incident with Mr. Crowe, her exclusion by Mr. Crowe and Ms. Tudor, and the significant decrease in her job responsibilities, Ms. McPherson became extremely distraught and physically ill, including insomnia, chest pains, dizziness, and irritability. She sought treatment from her physician, who recommended that she not work with Mr. Crowe and seek psychological counseling and start medication to deal with the stress and emotional trauma.

21. On July 31, 2019, Ms. McPherson sent an email to the Human Resources Director, Dee Smith, and Mr. Schmissrauter, regarding the incident with Mr. Crowe and the severe mental distress and physical illness that she was experiencing as a result of his treatment. She requested personal days off from work. Approximately two (2) hours later, Ms. McPherson received an email from Ms. Smith assuring Ms. McPherson that her health was their first concern and she would be sending Ms. McPherson FMLA paperwork to complete. Ms. Smith also stated that she and Mr. Schmissrauter would like to meet with her. Ms. McPherson replied to her email that she would be taking that Wednesday and Thursday off.

22. On August 1, 2019, Ms. McPherson emailed Ms. Smith to inform her she was going to use an additional sick day on Friday as well, and agreed to meet with Ms. Smith the following Monday.

23. On August 5, 2019, Ms. McPherson met with Ms. Smith and Mr. Schmissrauter. She could sense from the moment she sat down that their demeanor towards her had changed and was hostile. Ms. McPherson started crying before they could officially start the meeting. Mr. Schmissrauter told Ms. McPherson he had spoken to Mr. Crowe and he would like to discuss the email she sent to Mr. Crowe and Ms. Tudor. He asked Ms. McPherson why she felt Mr. Crowe's behavior was harassment and bullying. Mr. Schmissrauter told Ms. McPherson they did not feel that the incident was an attack or bullying, but merely a miscommunication. Mr. Schmissrauter then went on the attack against Ms. McPherson. Mr. Schmissrauter stated that he had received a complaint that someone overheard Ms. McPherson venting about what had happened between her and Mr. Crowe, and it made them uncomfortable. Ms. McPherson had previously been asked by coworkers what was wrong because they could see that she was upset and would stay to herself, limiting her breaks and lunches. Mr. Schmissrauter then referred to the time when Ms. McPherson had approached him requesting to meet with him, claiming that she had made him uncomfortable as well.

24. Mr. Schmissrauter and Ms. Smith told Ms. McPherson that she would have to go back to work for Mr. Crowe and "hash it out" with him. Ms. McPherson again told them that working with Mr. Crowe was adversely affecting her health. Mr. Schmissrauter then claimed that Ms. McPherson had not provided them with any medical documentation. Ms. McPherson told Mr. Schmissrauter that she was waiting on Ms. Smith to provide her with the FMLA paperwork. Ms. Smith interrupted and told Ms. McPherson that she would have the paperwork to

9

her before the end of the day. Ms. Smith told Ms. McPherson that she would need to take the paperwork to her physician to complete and send back to them. Mr. Schmissrauter told Ms. McPherson she could have until Wednesday, August 7th to work on the paperwork and come back to talk to them. Mr. Schmissrauter then restated that her only option was to go back to work with Mr. Crowe and that she was free to apply to any open positions, but that none were available at that time.

25. After the meeting, Ms. McPherson was very confused and did not feel comfortable or confident about the meeting or the handling of her complaints. Around lunch the same day, she sent a follow-up email to Ms. Smith and Mr. Schmissrauter expressing her concerns about the meeting. Neither Ms. Smith nor Mr. Schmissrauter responded to her email. Later that afternoon, Mr. Schmissrauter called Ms. McPherson and asked her more questions regarding the incident with Mr. Crowe, claiming that it would help him understand why she felt it was harassment, an attack, bullying or intimidation. Ms. McPherson told Mr. Schmissrauter that Mr. Crowe had yelled at her in a very rude and demeaning tone and was throwing his hands around during the meeting in a threatening manner. She told Mr. Schmissrauter that she did not feel comfortable working with Mr. Crowe and that he had become very controlling and abusive.

26. Later that day, Ms. McPherson tried to call Mr. Schmissrauter again to inquire about her job status. Mr. Schmissrauter did not return her call. Ms. McPherson sent another email to Ms. Smith and Mr. Schmissrauter telling them she did not feel that she was emotionally or physically able to have a meeting with Mr. Crowe and inquired about the status of her employment. Within fifteen (15) minutes Ms. Smith responded, stating when Ms. McPherson's last paycheck would be issued if she did not return to work under Mr. Crowe and emphasizing that there were no other options for her.

27. Ms. McPherson sent an email stating she was not unwilling to return to her current position but that she did not want to work with Mr. Crowe. The confrontation with Mr. Crowe had impacted Ms. McPherson severely causing extreme physical and emotional distress. Mr. Crowe's egregious and threatening manner affected Ms. McPherson mentally and emotionally, causing her to become physically ill when around him. Ms. McPherson was told that if she was unwilling to return to work with Mr. Crowe, then they did not have anything else for her. Ms. McPherson did not receive the FMLA paperwork from Ms. Smith, as promised.

28. On August 6, 2019, Mr. Schmissrauter sent another email to Ms. McPherson again stating that they had determined it was merely a miscommunication between her and Mr. Crowe, and that she would have to either return to work under Mr. Crowe or be terminated. Ms. McPherson responded, denying that there was any "miscommunication" and again reiterating that she was not physically able to work under Mr. Crowe per her doctor's instructions. Ms. McPherson then received an email from Mr. Schmissrauter stating that her email and message had been received and that they were taking the position that she had resigned her employment. He told Ms. McPherson to contact Ms. Smith regarding questions related to her final check, benefits, and to make arrangements to return company equipment. He also advised her that her company email would be shutoff upon receipt of the email. Again, Mr. Schmissrauter and Ms. Smith refused to send FMLA paperwork to Ms. McPherson. Ms. McPherson responded immediately that she was not quitting and that she was on medical leave with approximately 3 weeks of PTO left. Ms. McPherson received no reply.

### IV. FIRST CAUSE OF ACTION: DISCRIMINATION BASED ON GENDER TITLE VII AND TENNESSEE HUMAN RIGHTS ACT

29. Ms. McPherson re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 28 above.

30. Title VII, 42 U.S.C. § 2000e-2, states in pertinent part that it is unlawful for an employer "to discharge any individual…because of such individual's…sex."

31. The THRA, 4-21-401(a)(1) states in pertinent part that it is unlawful for an employer to "Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's … sex..."

32. The aforementioned acts of Defendant—especially termination of Ms. McPherson's employment—occurred without just cause and were not taken against similarly situated employees who were not women.

33. Mr. Crowe treated Ms. McPherson differently from her male counter-parts with regard to the pursuit of career advancement within the company as set forth above.

34. Mr. Crowe retaliated against Ms. McPherson for seeking advancement within the company, but supported and encouraged male employees in their efforts to advance their careers.

35. Defendant is vicariously liable for the acts of its supervisor, Mr. Crowe.

36. Defendant condoned and encouraged the abusive and discriminatory conduct by Mr. Crowe against Ms. McPherson based upon her gender as set forth above.

37. The aforementioned acts of Defendant, including the termination of Ms. McPherson's employment, constitutes unlawful and intentional discrimination against Ms. McPherson because of her gender, in violation of Title VII and the THRA.

38. Defendant acted with malice and reckless indifference to Ms. McPherson's rights under Title VII and the THRA.

39. As a result of Mr. Crowe's wrongful actions in discouraging and interfering with Ms. McPherson's efforts to advance her career within the company, and Defendant's conduct in

condoning and encouraging Mr. Crowe's demeaning and abusive conduct towards Ms. McPherson, she has been damaged financially and emotionally. In particular, Ms. McPherson has lost back pay and front pay, opportunities for advancement, and various employee benefits attendant thereto which she would have earned had Defendant not discriminated against her, along with incurring attorney fees. In addition to the actual and financial losses that Ms. McPherson has sustained, she has suffered emotional anguish, mental distress, humiliation and embarrassment, as a result of Defendant's wrongful actions.

## V.   SECOND CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT BASED ON GENDER

40. Ms. McPherson adopts and re-alleges each and every allegation set forth in paragraphs 1 through 39 of the Complaint as if set forth in full herein.

41. Mr. Crowe's aforementioned abusive and discriminatory conduct created a hostile work environment for Ms. McPherson, and this condition was so pervasive as to alter the conditions of Ms. McPherson's employment.

42. Mr. Crowe's aforementioned conduct was based on Ms. McPherson's gender.

43. Defendant is vicariously liable for the aforementioned conduct of Mr. Crowe because he was the agent, servant, and/or employee of Defendant and, in fact, was in a supervisory position over Ms. McPherson at the time of the offensive conduct.

44. Defendant failed to implement and enforce policies against discrimination in the workplace.

45. Defendant failed to properly train its supervisors and managers with regard to its policies against discrimination in the workplace.

46. As a direct and proximate result of the unlawful and intentional acts of Defendant, Ms. McPherson has been damaged financially and emotionally. In particular, Ms. McPherson

has lost back pay and front pay, opportunities for advancement, and various employee benefits attendant thereto which she would have earned had Defendant not discriminated against her. In addition to the actual and financial losses that Ms. McPherson has sustained, she has suffered emotional anguish, mental distress, humiliation and embarrassment because of Defendant's unlawful actions.

## VI. THIRD CAUSE OF ACTION – RETALIATION

47. Ms. McPherson re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 46 above.

48. Defendant's conduct as alleged above shows favoritism towards and protection of Mr. Crowe, a male supervisor, and punishment of and retaliation against Ms. McPherson, a female subordinate, for her complaints of discriminatory conduct in violation of Title VII and the THRA.

49. As a result of Defendant's wrongful actions, Ms. McPherson has been damaged financially and emotionally. In particular, Ms. McPherson has lost back pay and front pay, opportunities for advancement, and various employee benefits attendant thereto which she would have earned had Defendant not discriminated against her. In addition to the actual and financial losses that Ms. McPherson has sustained, she has suffered emotional anguish, mental distress, humiliation and embarrassment because of Defendant's unlawful actions.

## VII. FOURTH CAUSE OF ACTION: VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

50. Ms. McPherson adopts and realleges each and every allegation set forth in paragraphs 1 through 49 of the Complaint as if set forth in full herein.

51. Defendant is an "employer" as defined by 29 U.S.C § 2611(4), as it employed fifty (50) or more employees for each workday during each of twenty (20) or more calendar weeks.

52. Ms. McPherson is an "eligible employee" as defined by 29 U.S.C. § 2611(2) as she had been employed by Defendant for more than 12 consecutive months, and during this time period has worked at least 1,250 hours within the 12-month period immediately preceding her need for leave.

53. Ms. McPherson requested medical leave on July 31, 2019 due to the emotional distress caused by Mr. Crowe's abusive conduct and based upon the recommendation of her doctor.

54. Defendant's Human Resources Manager and In-house Counsel told Ms. McPherson that they would provide the FMLA paperwork to her and that she would have until August 7, 2019 to return the paperwork to them.

55. Although Ms. McPherson continued to request the FMLA paperwork from Defendant's Human Resources Manager and In-house Counsel, it was not provided.

56. Instead, Defendant terminated Ms. McPherson's employment on August 6, 2019.

57. Defendant interfered with and denied Ms. McPherson her rights under the FMLA as set forth above.

58. Defendant retaliated against Ms. McPherson for requesting medical leave under the FMLA as set forth above.

59. As a direct and proximate result of Defendant's wrongful actions, Ms. McPherson sustained loss of back pay, front pay, and has incurred attorney fees. In addition, Ms. McPherson is entitled to an award of liquidated damages against Defendant.

## VIII. FIFTH CAUSE OF ACTION: VIOLATION OF THE HEALTHY WORKPLACE ACT, T.C.A. 50-1-503

60. Ms. McPherson adopts and realleges each and every allegation set forth in paragraphs 1 through 59 of the Complaint as if set forth in full herein.

61. Mr. Crowe engaged in abusive conduct towards Ms. McPherson in the workplace based upon her gender, including repeated verbal, nonverbal, and conduct of a threatening, intimidating, and humiliating nature as described above, in violation of the Tennessee Healthy Workplace Act.

62. Mr. Crowe substantially interfered with Ms. McPherson's work performance and created an intimidating, hostile, and offensive working environment for her.

63. Mr. Crowe sabotaged and undermined Ms. McPherson's work performance in the workplace and wrongfully terminated her employment.

64. Defendant is liable to Ms. McPherson for negligent and intentional infliction of emotional distress by Mr. Crowe as set forth above.

65. Defendant is liable to Ms. McPherson for the harassment, intimidation and bullying by Mr. Crowe as set forth above.

66. Mr. Crowe's abusive conduct caused physical and emotional distress to Ms. McPherson.

67. Defendant failed to provide adequate training for Mr. Crowe.

68. Defendant failed to create a comprehensive complaint process, describing (1) the actual process for reporting complaints by potential victims, witnesses, and supervisors; (2) the procedures for an effective investigation; and (3) the resulting corrective actions for the various parties involved.

69. Defendant failed to maintain the confidentiality of Ms. McPherson's complaints.

70. As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Ms. McPherson has suffered and will suffer loss of back pay, front pay, employment

benefits, and bonuses. Further, Ms. McPherson has suffered emotional distress, humiliation, embarrassment, pain and suffering, damage to her reputation, and other non-pecuniary damages.

## IX.   JURISDICTIONAL PREREQUISITE

71.     Ms. McPherson has met the jurisdictional prerequisite of 29 U.S.C. § 626 by filing a timely-written Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), obtaining a Notice of Right to Sue from the EEOC and filing this Complaint within ninety (90) days from the receipt of the Notice.

**WHEREFORE, PREMISES CONSIDERED**, Ms. McPherson prays:

A.     That process be issued and served upon the Defendant requiring it to appear and answer within the time prescribed by law;

B.     That upon the hearing of this cause, Ms. McPherson be awarded compensatory damages in the amount of $500,000.00;

C.     That Ms. McPherson be awarded liquidated damages;

D.     That Ms. McPherson be awarded punitive damages;

E.     That Ms. McPherson be awarded her reasonable attorney's fees, discretionary costs, and the costs of this action; and

F.     That the Ms. McPherson be granted such other and further damages and relief as the Court deems proper.

**A TRIAL BY JURY IS HEREBY REQUESTED.**

Respectfully submitted,

**GRACE E. DANIELL, P.C.**

By: /s/ Grace E. Daniell
    Grace E. Daniell, BPR #012045
    Attorney for Plaintiff
    620 Lindsay Street, Suite 210
    Chattanooga, TN 37403
    (423) 266-3179
    (423) 634-8991 (Facsimile)