UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| SARAH MCPHERSON, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | No.: 1:20-CV-126 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| METROPOLITAN SECURITY SERVICES, INC., d/b/a WALDEN SECURITY, | ) ) ) | Magistrate Judge Christopher H. Steger |
| | ) | |
| *Defendant*. | ) | |

## **M E M O R A N D U M**

Before the Court is Defendant Walden Security's motion for partial dismissal. (Doc. 8.) Plaintiff, Sarah McPherson, has filed a response in opposition (Doc. 13), and Defendant has replied (Doc. 14).

## I.  **BACKGROUND**

Because the matter is before the Court on a motion to dismiss, the following summary of the facts accepts all factual allegations in Plaintiff's Complaint (Doc. 1) as true. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Defendant is a corporation providing security services in Hamilton County, Tennessee. (Doc. 1 ¶ 4.) In November 2015, Defendant hired Plaintiff as a Training Administrator, and she was promoted to Human Resources Assistant in September 2016. (*Id.* ¶ 5.) In April 2017, Defendant promoted Plaintiff once again, this time to Learning Management Systems Administrator. (*Id.* ¶ 6.) In this position, Defendant worked under the Learning and Development Director, Jason Crowe, who was supervised by the Executive Vice President, Lauren Tudor. (*Id.*)

Plaintiff wanted to continue advancing within the company. (*Id.*) Around September 2018, Plaintiff noticed Mr. Crowe had become more controlling of her. (*Id.* ¶ 8.) He refused to discuss Plaintiff's advancement and withheld job opportunities from her. (*Id.*) Plaintiff "felt that Mr. Crowe was not supportive of her advancement within the company, like he was with her male counter-parts." (*Id.*) Mr. Crowe's treatment of her, among other reasons, made Plaintiff interested in transferring to a different division within Defendant. (*Id.*)

Around September or October 2018, the Director of Human Resources for the Federal Services Division of Defendant asked Plaintiff if she was interested in a position with the division, stating Plaintiff came highly recommended. (*Id.* ¶ 7.) Plaintiff then interviewed for the position, during which her interviewers said they wanted to hire her but needed to discuss the possible transfer with Ms. Tudor. (*Id.*) Ms. Tudor, while supportive of Plaintiff's advancement, discouraged her from taking the Federal Services Division position, referring to it as a "backwards step" in Plaintiff's career. (*Id.*) Mr. Crowe, on the other hand, "jokingly" texted Plaintiff he was displeased with her possible transfer. (*Id.* ¶ 8.)

In November 2018, Plaintiff told Ms. Tudor she was interested in a position with the Sales Division, which Ms. Tudor seemed to support. (*Id.* ¶ 10.) Another employee, Megan Bell, joined Plaintiff's division around this time, and Ms. Tudor told Plaintiff she could transfer after Ms. Bell was trained. (*Id.*) Plaintiff tried to discuss her possible transfer to Sales with Mr. Crowe, but he never responded when Plaintiff brought it up. (*Id.*) In January 2019, Mr. Crowe told Plaintiff the Sales position "was no longer on the table . . . due to recent changes in business needs." (*Id.* ¶ 11.) Shortly thereafter, Plaintiff was promoted to Learning and Development Manager, but she still reported to Mr. Crowe. (*Id.*)

In June 2019, while on vacation, Plaintiff applied for a position as Defendant's Director of Quality Assurance. (*Id.* ¶ 12.) Plaintiff immediately messaged Mr. Crowe about her application, but he did not respond. (*Id.*) At a meeting the following week, Mr. Crowe told Plaintiff he "was not happy about her text" and "would have preferred for [her] to tell him in person." (*Id.*) Plaintiff reminded Mr. Crowe she had been on vacation, but Mr. Crowe insisted she tell him in person if she applied for other positions. (*Id.*) Then, "[i]n a very derogatory tone," he questioned whether Plaintiff was ready for a Director position. (*Id.*) He also told Plaintiff she would receive only a "courtesy interview" for the position. (*Id.*)

On June 24, 2019, Plaintiff emailed Ms. Tudor and Mr. Crowe to discuss her career planning and available Quality Assurance positions in light of "Mr. Crowe's adverse reactions to [her] repeated attempts to advance her career within the company." (*Id.* ¶ 13.) The following morning, neither Ms. Tudor nor Mr. Crowe had responded to Plaintiff. (*Id.* ¶ 14.) However, following a phone call, Mr. Crowe came to Plaintiff's office "appearing extremely agitated and upset" and said Plaintiff needed to come with him. (*Id.*)

Plaintiff followed Mr. Crowe outside, where he "abruptly and angrily" asked to discuss Plaintiff's email. (*Id.* ¶ 15.) Plaintiff explained she wanted to have a meeting to discuss her career and a transfer to Quality Assurance. (*Id.*) Mr. Crowe "then proceeded to verbally attack her." (*Id.*) He stated Plaintiff was "selfish, greedy, and ungrateful" to apply for other positions considering how much he and Ms. Tudor had given Plaintiff. (*Id.*) Mr. Crowe said Plaintiff would receive an interview, but not an offer, for the Quality Assurance position, stating "they were not looking for a 'Sarah.'" (*Id.*) Mr. Crowe instructed Plaintiff not to contact Ms. Tudor again without his knowledge and "that she was not in charge of her career, that he was." (*Id.* at ¶¶ 15–16.)

3

Throughout this conversation, "Mr. Crowe was very abusive, threatening, and demeaning towards" Plaintiff. (*Id.* ¶ 15.)

In July 2019, Plaintiff asked Defendant's General Counsel, Kurt Schmissrauter, to meet to discuss the situation with Mr. Crowe. (*Id.* ¶ 19.) Mr. Schmissrauter agreed but failed to respond to Plaintiff's request for a specific meeting time. (*Id.*) On July 30, 2019, Plaintiff emailed Mr. Schmissrauter and Dee Smith, the Human Resources Director, to request time off due to the situation with Mr. Crowe, which was causing Plaintiff severe mental distress and physical illness. (*Id.* ¶¶ 20–21.) Ms. Smith said she would send Plaintiff the necessary paperwork to do so. (*Id.* ¶ 21.) Plaintiff then took three days off from work. (*Id.* ¶¶ 21–22.)

On August 5, 2019, Plaintiff returned to work and met with Ms. Smith and Mr. Schmissrauter to discuss Plaintiff's emails regarding transfer and why she felt bullied and harassed by Mr. Crowe. (*Id.* ¶ 23.) Mr. Schmissrauter stated the situation was "merely a miscommunication," not harassment and bullying, and told her to "hash it out" and continue to work with Mr. Crowe. (*Id.* ¶ 24.) Plaintiff told them her doctor advised her not to do so, as it was negatively affecting her health, and said she could complete necessary paperwork once it was provided by Ms. Smith. (*Id.* ¶¶ 20, 24.)

Later that day, Plaintiff emailed Mr. Schmissrauter and Ms. Smith, stating she felt physically and emotionally unable to meet with Mr. Crowe and asked about the status of her job. (*Id.* ¶ 26.) Ms. Smith responded by providing the date of Plaintiff's last paycheck if she did not return to her current position. (*Id.*) Plaintiff replied that she would do so only if she did not have to work with Mr. Crowe, to which the response was Plaintiff had no other option. (*Id.* ¶ 27.)

On August 6, 2019, Mr. Schmissrauter emailed Plaintiff that the incident with Mr. Crowe was deemed a miscommunication and that Plaintiff could either return to work with Mr. Crowe or

4

be fired. (*Id.* ¶ 28.) Plaintiff responded that she was physically unable to work with Mr. Crowe, as she had been told by her doctor. (*Id.* ¶¶ 20, 28.) Mr. Schmissrauter then replied, indicating Plaintiff's response would be considered her resignation. (*Id.* ¶ 28.) Although Plaintiff immediately responded she was not resigning, her employment ended that day. (*Id.* ¶¶ 5, 28.)

On May 20, 2020, Plaintiff filed this lawsuit against Defendant. (Doc. 1.) The Complaint asserts five causes of action: (1) discrimination based on gender under Title VII and the Tennessee Human Rights Act (the "THRA") (*id.* ¶¶ 29–39); (2) hostile work environment based on gender (*id.* ¶¶ 40–46); (3) retaliation (*id.* ¶¶ 47–49); (4) violation of the Family and Medical Leave Act (*id.* ¶¶ 50–59); and (5) violation of the Tennessee Healthy Workplace Act (the "THWA") under Tenn. Code Ann. § 50-1-503 (*id.* ¶¶ 60–70).

Defendant has filed a motion for partial dismissal of Plaintiff's gender-discrimination claims and her THWA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 8.) Defendant presents two grounds for dismissal of Plaintiff's gender-discrimination claims. (*See id.* at 8–15.) First, Defendant argues Plaintiff has failed to satisfy the plausibility standard required to survive a Rule 12(b)(6) motion. (*Id.* at 8–13.) Second, Defendant asserts Plaintiff's allegations are broad and conclusory and fail to give rise to a fair inference that Defendant discriminated against Plaintiff based on her gender. (*Id.* at 14–15.) As to Plaintiff's THWA claim, Defendant contends there is no private right of action under the statute. (*Id.* at 15–17.)

Plaintiff has filed a response in opposition to the motion to dismiss. (Doc. 13.) Plaintiff agrees to the dismissal of her THWA claim. (*Id.* at 7.) However, Plaintiff asserts she set forth sufficient factual allegations in her Complaint to meet the plausibility standard of Rule 12(b)(6) for her gender-discrimination claims. (*Id.* at 3–4.) She argues these allegations are not conclusory,

but rather "[a] reasonable person could infer that gender factored into Mr. Crowe's abusive actions and derogatory comments." (*Id.* at 4.)

Defendant filed a reply, in which it again argues Plaintiff has failed to show a discriminatory link between her firing and her gender, as well as any specific evidence that Mr. Crowe treated Plaintiff's male colleagues differently. (Doc. 14 at 2–7.)

Defendant's motion for partial dismissal (Doc. 8) is now ripe.

## II.   STANDARD OF REVIEW

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court first must accept all factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). All ambiguities must be resolved in the plaintiff's favor. *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993) (citing *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577 (6th Cir. 1992)). Bare legal conclusions, however, need not be accepted as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After assuming the veracity of factual allegations and construing ambiguities in the plaintiff's favor, the Court then must determine whether those allegations "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Sufficient factual allegations are pleaded when a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether the complaint states a plausible claim on its face, a court must "draw on its judicial experience and common sense." *See id.* at 679.

### III.  DISCUSSION

As an initial matter, Plaintiff agrees to the dismissal of her Tennessee Healthy Workplace Act claim.  (Doc. 13 at 7.)  Thus, the Court will **DISMISS** Plaintiff's Tennessee Healthy Workplace Act claim.

The remaining question is whether Plaintiff failed to state a claim of gender discrimination under Title VII and the THRA.  The Court can analyze Plaintiff's federal and state gender-discrimination claims together, as "[t]he analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims." *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008).

At this stage, Plaintiff need not plead the elements of a *prima facie* case under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as it is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  *Swierkiewicz*, however, "did not change the law of pleading," so Plaintiff still must satisfy the "plausibility" standard. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570); *see also James v. Hampton*, 592 F. App'x 449, 460 (6th Cir. 2015) (citing *Keys*, 684 F.3d at 609) ("Our court has held that *Swierkiewicz* remains good law after the Supreme Court's decisions in *Iqbal* and [*Twombly*].").  Thus, the Court must determine whether Plaintiff alleges sufficient "factual content" from which the Court can "draw the reasonable inference" of gender discrimination. *Iqbal*, 556 U.S. at 678.

Plaintiff's explicit allegations regarding gender discrimination are as follows:

- "Ms. McPherson felt that Mr. Crowe was not supportive of her advancement within the company, like he was with her male counterparts."  (Doc. 1 ¶ 8.)

- "The aforementioned acts of Defendant—especially termination of Ms. McPherson's employment—occurred without just cause and were not taken against similarly situated employees who were not women."  (*Id.* ¶ 32.)

7

- "Mr. Crowe retaliated against Ms. McPherson for seeking advancement within the company, but supported and encouraged male employees in their efforts to advance their careers." (*Id.* ¶ 33.)

- "The aforementioned acts of Defendant, including the termination of Ms. McPherson's employment, constitutes unlawful and intentional discrimination against Ms. McPherson because of her gender, in violation of Title VII and the THRA." (*Id.* ¶ 37.)

Plaintiff provides detailed factual allegations regarding her interactions with Mr. Crowe, which Plaintiff contends "are classic signs of sex discrimination in a workplace where a male boss demeans and is abusive to a female subordinate because of her gender." (Doc. 13 at 4.)

Plaintiff's factual allegations are "unwarranted inferences of fact cast in the form of factual allegations." *See Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 625 (6th Cir. 2013). Plaintiff asks the Court to infer gender discrimination based on "classic signs of sex discrimination," rather than presenting sufficient facts to illustrate such discrimination occurred. But "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Mr. Crowe's actions and comments could be interpreted as sex discrimination, but "merely creat[ing] a *suspicion* of a legally cognizable right of action" is insufficient. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

In addition, although Plaintiff alleges Defendant's actions "were not taken against similarly situated employees who were not women" and "Mr. Crowe supported and encouraged male employees in their efforts to advance their careers," (Doc. 1 ¶¶ 32–33), absent in the Complaint are "specifics regarding the other employees or their differing treatment." *See Smith v. Wrigley*

*Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (citing *Sam Han*, 541 F. App'x 622).[1] In *Smith*, an age-discrimination plaintiff failed to state a claim because she "offered no names, ages or qualifications of the younger employees who were treated differently, or any examples of how their treatment differed." *Id.* at 448. Without such facts, "the court [could not] infer that [the defendant] fired [the plaintiff] because of her age." *Id.*; *see also Sam Han*, 541 F. App'x at 627 (affirming the district court's Rule 12(b)(6) dismissal because the plaintiff "offered no specifics regarding who those employees were or how they were treated differently"). The same is true here—Plaintiff offers no factual allegations to demonstrate Defendant treated male employees differently.[2] *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) ("[A] recitation of the elements of the cause of action is insufficient to state a claim for relief.").

In addition, Plaintiff fails to state a claim for gender discrimination because she relies on her subjective belief that such discrimination occurred, not factual allegations. Plaintiff's only factual allegation addressing how Mr. Crowe treated Plaintiff's male colleagues differently states Plaintiff "*felt* that Mr. Crowe was not supportive of her advancement within the company, like he

---

[1] *See, e.g.*, *Keys*, 684 F.3d at 610 (noting the complaint "details several specific events in each of the employment-action categories where [the plaintiff] alleges she was treated differently than her Caucasian management counterparts; it identifies the key supervisors and other relevant persons by race and either name or company title; and it alleges that Keys and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances"); *James*, 592 F. App'x at 461 (reversing the district court's Rule 12(b)(6) dismissal, as "the plaintiffs pleaded membership in the protected class, specific adverse employment actions taken against them, and instances in which they were treated less favorably than identified non-class members").

[2] Plaintiff's only allegations regarding other employees' treatment concern Ms. Bell, another female employee. (*See* Doc. 1 ¶¶ 10, 17.) Plaintiff argues Defendant has failed to identify any male employee treated similarly to Plaintiff or a legitimate non-discriminatory reason for Mr. Crowe's treatment of Plaintiff. (Doc. 13 at 4–5.) But, at this stage of the proceeding, Defendant need not do so. *See James*, 592 F. App'x at 460 ("Upon establishing the *prima facie* case, the burden shifts to the defendant to show evidence of a legitimate nondiscriminatory reason for the adverse employment action [under the *McDonnell Douglas* framework].").

9

Case 1:20-cv-00126-CLC-CHS   Document 18   Filed 01/28/21   Page 9 of 10   PageID #: 87

was with her male counterparts." (Doc. 1 ¶ 8 (emphasis added).) Beyond this allegation, there are no facts suggesting Defendant or Mr. Crowe discriminated against Plaintiff, and "[t]he Court is not required to accept inferences drawn by Plaintiff if those inferences are unsupported by the facts alleged in the complaint." *Sam Han*, 541 F. App'x at 627; *see, e.g.*, *Hatcher v. Hegira Programs, Inc.*, No. 19-cv-11720, 2020 WL 1083719, at *5 (E.D. Mich. Mar. 6, 2020) ("Plaintiff's subjective belief that she was not promoted, or was terminated, as a result of her race or gender are insufficient to sustain her claim."); *Veasy v. Teach for Am., Inc.*, 868 F. Supp. 2d 688, 696 (M.D. Tenn. 2012) (emphasis added) ("Veasy's broad and conclusory allegations of racial discrimination, which are *entirely subjective as alleged*, do not give rise to a fair inference that TFA discriminated against him on the basis of race.").

The Court finds Plaintiff has failed to state a claim for gender discrimination under Title VII and the THRA. The Court therefore will **DISMISS** Plaintiff's gender-discrimination claims.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion for partial dismissal (Doc. 8), **DISMISS WITH PREJUDICE** Plaintiff's gender-discrimination claims under Title VII and the Tennessee Human Rights Act, and **DISMISS WITHOUT PREJUDICE** Plaintiff's Tennessee Healthy Workplace Act claim.

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**